## S92A1420. WOOTEN v. THE STATE.
(426 SE2d 852)

Sears-Collins, Justice.

On September 20, 1978, Charles Buffington was discovered dead in his home in Trenton, Georgia, having suffered severe blunt trauma to the head. Buffington was 80 years old when he died. The appellant was arrested and charged with the victim's murder on October 21, 1978. A preliminary hearing was held on December 7, 1978, at which key witnesses for the prosecution were unwilling or unable to connect the appellant with the crime. The case against the appellant was then "dropped." After new evidence was discovered, the appellant was indicted for the victim's murder in 1990, and was convicted of felony murder in 1991.[1] We affirm the conviction and sentence.

The evidence presented at trial authorized the jury to find the following facts. Freddie Wooten lived in Trenton with his purported wife, Linda Brown, and her mother and father. The victim, who operated a scrap metal and pawn business out of his home, had loaned Linda Brown some money, with her car as collateral. On the day before he was killed, the victim had an argument with Linda Brown, in the presence of the appellant, over a partial loan payment Brown had made. The victim threatened to take Brown's car if the payment was not made in full. Later that day, the appellant asked Brown where the victim lived, where he kept his money, and when the victim's daughter-in-law, Sue Buffington, who lived next door to the victim, was likely to be out. Brown showed him the victim's house and told him that the victim kept his money in a cigar box in his bedroom. The day after the argument about the loan, the appellant left Brown's house around 8:00 a.m., wearing a plaid shirt and driving a brown station wagon with an off-colored panel or fender. Around 12:30 that afternoon, after returning from taking her child to school, Sue Buffington saw a brown station wagon with an off-colored panel parked in front of the victim's house, and saw a man in a plaid shirt come out of the house, get into the car and leave. Later that day, between 1:30 and 2:00 p.m., Sue Buffington and a friend, who had been unable to find the victim, went into the victim's home and found him dead on the floor of his living room. The victim's bedroom was ransacked, drawers and cigar boxes having been emptied onto the

---

[1] The appellant was indicted by a Dade County grand jury on October 8, 1990. He was tried April 22-25, 1991, and sentenced on April 26, 1991, to life imprisonment, the sentence to be served consecutive to any sentence currently being served. The appellant filed a motion for new trial on May 22, 1991. The transcript was certified by the court reporter on November 22, 1991. The appellant's motion for new trial was amended on July 1, 1992, and denied on July 9, 1992. The appellant filed his notice of appeal on August 4, 1992, and the appeal was docketed in this court on August 18, 1992. The parties' oral arguments were heard by this court on October 13, 1992.

floor. Four handguns, some old coins, and some paper money were missing from the victim's home.

That same afternoon, the appellant drove a brown station wagon with an off-colored panel to the back of a store owned by his sister. When he came into the store, the appellant had blood on his clothes. He told his sister that he had hit a dog, and asked for some garbage bags. He changed his clothes at the store. That evening, the appellant returned to Linda Brown's house in a blue truck and wearing different clothes than when he had left. He had with him about $300 in cash and a pistol, which he tried to sell to Linda Brown's mother. Several days later, after she had reported the crime, the authorities showed Sue Buffington a brown station wagon behind the appellant's sister's store. Buffington said it could be the one she saw at the victim's home, but by this time the car had been beaten, as if with a sledge hammer, and the windshield broken out. A few weeks later, the appellant sold some old coins to his cousin.

Sometime during September or October of 1978, the appellant told Janice Wooten, from whom he was separated but to whom he was still legally married, that he had killed a man in his eighties. At some time before he was arrested, the appellant asked an acquaintance, Elbert Allen, for a ride to Tennessee. Allen agreed, and on the ride the appellant told Allen that he had killed the victim and taken a large sum of money and some guns. Also in September or October of 1978, the appellant's sister and his mother drove to Tennessee and met the appellant in a motel, where he told them he had killed someone with his fists.

About five years after Charles Buffington's death, the appellant pled guilty to manslaughter in an unrelated case and was imprisoned in Alabama.

In 1990, at the request of the victim's family, the details of Charles Buffington's death were aired on a Chattanooga television show called "Crimestoppers." After seeing the show, Elbert Allen's daughter, with whom Allen was living, called the police and told them what Allen knew about the crime. Further investigation ensued, and the authorities discovered other witnesses. They also found that Linda Brown, who had claimed the marital privilege and refused to testify against the appellant at the 1978 preliminary hearing, was never actually married to Freddie Wooten, since his marriage to Janice Wooten had not been terminated. The appellant was then indicted for the crime and was brought over from prison in Alabama to stand trial pursuant to the Interstate Agreement on Detainers, OCGA § 42-6-20.

1. When considered in the light most favorable to the verdict, we find that the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the appellant is guilty of the

crimes charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his first enumeration of error, the appellant contends that the trial court erred in refusing to grant his motion to dismiss for failure to provide a speedy trial. The appellant argues that the delay between his arrest in 1978 and his trial in 1991 violated his right to a speedy trial, as guaranteed by the Sixth Amendment to the United States Constitution and the Georgia Constitution.

Two types of pre-trial delay have been recognized as possibly violative of constitutional rights. A pre-trial delay which *follows* an arrest or indictment may violate the right to a speedy trial guaranteed by the Sixth Amendment. *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972); *Harris v. Hopper*, 236 Ga. 389 (224 SE2d 1) (1976). In determining whether the Sixth Amendment right to a speedy trial has been violated, courts consider 1) the length of the delay, 2) the reason for the delay, 3) the defendant's assertion of the right to a speedy trial, and 4) whether the defendant was prejudiced by the delay. *Barker*, 407 U. S. at 530; see also *Haisman v. State*, 242 Ga. 896, 898 (252 SE2d 397) (1979). Additionally, "for purposes of speedy trial we begin to 'count' from the date of arrest if that precedes indictment, . . . and time from arrest to indictment is added to time from indictment to trial." *Harris*, 236 Ga. at 390.

The Sixth Amendment does not guarantee a right to a speedy *arrest*. However, an inordinate delay between the time a crime is committed and the time a defendant is arrested or indicted may violate *due process* guarantees under the Fifth and Fourteenth Amendments. *United States v. Marion*, 404 U. S. 307, 324 (92 SC 455, 30 LE2d 468) (1971). To find a due process violation where a delay precedes arrest and indictment, courts must find 1) that the delay caused actual prejudice to the defense, *and* 2) that the delay was the product of deliberate action by the prosecution designed to gain a tactical advantage. Id.; see also *United States v. Lovasco*, 431 U. S. 783, 795 (97 SC 2044, 52 LE2d 752) (1977); *State v. Hight*, 156 Ga. App. 246, 248 (274 SE2d 638) (1980).

In *United States v. MacDonald*, 456 U. S. 1 (102 SC 1497, 71 LE2d 696) (1982), the United States Supreme Court considered whether the due process standard or the Sixth Amendment standard should apply where an individual is arrested and charged with an offense, then released and the charges are dismissed, and, after a delay, the same individual is again arrested or indicted for the same offense. In *MacDonald*, the accused, a military officer, was charged by a military court with the murder of his pregnant wife and two children. The military charges were dropped, but the investigation continued, and about five years later, MacDonald, having subsequently been discharged from the military, was indicted for the three murders by a

civilian grand jury. The Supreme Court held that the time between the dismissal of the military charges and the indictment on civilian charges should not be considered in determining whether the delay in bringing MacDonald to trial violated his Sixth Amendment right to a speedy trial. Rather, that delay should be considered only under due process standards. The Court reasoned that

> [t]he Sixth Amendment right to a speedy trial is not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.
> . . .
> Following dismissal of charges, any restraint on liberty, disruption of employment, strain on financial resources, and exposure to public obloquy, stress and anxiety is no greater than it is upon anyone openly subject to a criminal investigation.

Id. at 8; see also *United States v. Loud Hawk*, 474 U. S. 302 (106 SC 648, 88 LE2d 640) (1986).

In this case, the appellant contends that the Sixth Amendment standard should apply because at the end of his 1978 preliminary hearing, the only ruling made by the court was to "continue the bond," and the charges against him were never formally dismissed. However, at the hearing on the appellant's motion to dismiss, law enforcement officers testified that they considered the case against the appellant "dropped" following the 1978 preliminary hearing, and they went on to pursue leads about other possible perpetrators. Although no formal dismissal of the warrant under which the appellant was arrested was ever filed, there was testimony that it was not uncommon for warrants to be verbally dismissed by the justice of the peace, who did not even have an office in the county at that time. Moreover, there is no dispute that the appellant was released from custody after the 1978 preliminary hearing. The appellant does not allege any further restraints on his liberty based on that arrest, or any disruption in his life which was different from "anyone openly subject to a criminal investigation." Further, the appellant never requested a formal dismissal of his indictment. Therefore, we find that the pre-trial delay should be considered under due process standards of prejudice and

intent to gain tactical advantage.

3. The appellant contends that his defense was prejudiced by the delay because potential defense witnesses either died before trial or could not remember crucial facts, and because material evidence was destroyed. The offense in this case is murder, for which there is no applicable statute of limitation. Hence, any prejudice which results merely from the passage of time cannot create the requisite prejudice. The possibilities that "memories will dim, witnesses become inaccessible, and evidence be lost" are inherent in any extended delay, and, "these possibilities are not in themselves enough to demonstrate that [the appellant] cannot receive a fair trial. . . ." *Marion*, 404 U. S. at 326; *State v. Madden*, 242 Ga. 637, 638 (250 SE2d 484) (1978). As the appellant alleges nothing which should not be expected due to the passage of time, we cannot find that the prejudice alleged by the appellant is sufficient to require dismissal of the indictment.

With regard to the second prong of the due process test, the appellant argues that the reason for the delay was the negligence of law enforcement officers in failing to interview all available witnesses in 1978, and failing to discover that Linda Brown's exercise of marital privilege was improper. The appellant does not allege that the delay was an intentional attempt by the prosecution to gain a tactical advantage, does not present any evidence or arguments to that effect, and we find nothing in the record which indicates such intent. Therefore, we find that the appellant's due process rights were not violated by the delay in this case, and that the trial court correctly denied the appellant's motion to dismiss on that ground.

4. In his second enumeration of error, the appellant contends that the trial court erred by admitting evidence regarding the manslaughter to which the appellant pled guilty in Alabama. The appellant argues that the prosecution failed to show a sufficient connection between the independent offense and the crime for which the appellant was tried.[2]

Before any evidence of an independent offense may be introduced, the state must show 1) that the evidence is " ' "relevant for some purpose other than to show a probability that (the defendant) committed the crime on trial because he is a man of criminal character . . .," ' " *Walraven v. State*, 250 Ga. 401, 407 (297 SE2d 278) (1982) (quoting McCormick on Evidence, § 190 at 447 (2d ed. 1972)." *Williams v. State*, 251 Ga. 749, 755 (312 SE2d 40) (1983); 2) "that there is sufficient evidence to establish that the accused committed the independent offense or act . . ." *Williams v. State*, 261 Ga. 640, 642 (409

---

[2] The appellant does not allege a failure to provide notice of intent to present evidence of a similar crime, or failure to hold a hearing on the admissibility of that evidence. See *Maxwell v. State*, 262 Ga. 73 (2) (414 SE2d 470) (1992).

SE2d 649) (1991); and 3) "that there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter." Id.

At the evidentiary hearing before the trial court, the prosecution stated that the purpose for introducing the similar transaction evidence was to prove identity and intent. Each of these purposes has been deemed an exception to the general rule of inadmissibility of similar transaction evidence. See id. at 642, n. 2. The state satisfactorily established that the appellant committed the similar crime by presenting a certified copy of his plea of guilty and conviction for that offense, see *Fambro v. State*, 165 Ga. App. 445, 447 (299 SE2d 114) (1983), as well as testimony by the Alabama law enforcement officer who investigated that crime and by the victim's son as to the relationship between the victim and the appellant, and as to the circumstances of the victim's death. See *Stephens v. State*, 261 Ga. 467, 468 (6) (405 SE2d 483) (1991). As to the requirement of similarity, in both the present case and the Alabama case the appellant or his current girl friend had borrowed money from the victim in connection with a car, the victim was an older man who lived alone, the appellant had reason to believe that the victim kept large sums of money in his home, the appellant stole guns from the victim's home, the victim had been beaten in the head (in the Alabama homicide, the victim was also shot twice with a shotgun), and the victim's face was covered after he was killed. We find that these similarities show a sufficient connection between the two offenses so that proof of the one tends to prove the other.

5. After carefully considering the appellant's remaining contentions, we find that they contain no reversible error.

*Judgment affirmed. Clarke, C. J., Hunt, P. J., Benham, Fletcher and Hunstein, JJ., concur.*

DECIDED MARCH 15, 1993.

*Franklin & Franklin, James D. Franklin,* for appellant.
*Ralph Van Pelt, Jr., District Attorney, Michael J. Bowers, Attorney General, Peggy R. Katz, Staff Attorney,* for appellee.