S05A0216. JACKSON v. THE STATE.
(614 SE2d 781)

BENHAM, Justice.

This appeal is from Terry Robert Jackson's conviction for malice murder.[1] Jackson was indicted in 1999 for the 1975 shooting death of Atlanta police detective Samuel Guy who was working off-duty as a security guard at a hotel when it was robbed. Jackson and an accomplice, Wilkinson, were identified by an informant named Larry Smith in 1982, but were not indicted until after Wilkinson's former wife, Myrtle Rutledge, came forward in 1998 and identified Jackson and Wilkinson as the perpetrators of the robbery and murder. While Jackson and Wilkinson were jointly indicted, the State consented to severance and elected to try Wilkinson first. Wilkinson pled guilty to aggravated assault pursuant to an agreement to testify. At Jackson's trial in July 2002, Wilkinson testified he and Jackson robbed a motel and Jackson exchanged shots with Guy, shooting Guy in the leg. Rutledge testified Wilkinson told her the morning after the robbery that Jackson had shot a security guard during the robbery. She also identified Wilkinson and Jackson from photographs dating from the 1970s and testified Jackson drove a small red car. Larry Smith

---

[1] The murder was committed on July 7, 1975, and Jackson was indicted on October 12, 1999, for malice murder, felony murder (aggravated assault), felony murder (armed robbery), aggravated assault, armed robbery, and possession of a firearm during commission of a felony. A jury trial begun July 17, 2002, concluded on July 29 with guilty verdicts on the malice murder and felony murder counts. The remaining counts were quashed pursuant to Jackson's motion. The trial court sentenced Jackson to life imprisonment for malice murder and the felony murder verdicts were vacated by operation of law. A motion for new trial filed August 12, 2002, and amended April 29, 2003, was denied by an order filed June 13, 2003. Pursuant to a notice of appeal timely filed on July 14, 2003, the record was transmitted to this Court and the appeal was docketed October 1, 2004. Oral argument was had on January 25, 2005.

testified he saw Jackson and Wilkinson on the street shortly after the robbery and Jackson, who was driving a red Dodge Dart, told him he had shot a security guard during a robbery. Testimony from a medical examiner established that Guy was shot in the leg and the shoulder and died from those wounds, chiefly from loss of blood due to the leg wound. Testimony from a firearms examiner concerning the location of shell casings and bullets at the crime scene corroborated Wilkinson's testimony regarding the robbery and Jackson's role as the one who shot Guy. Jackson was convicted of malice murder and two counts of felony murder and was sentenced for malice murder.

1. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find Jackson guilty beyond a reasonable doubt of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Jackson contends that the elapse of 24 years between the murder and his indictment denied him due process of law under the Fifth and Fourteenth Amendments.

> [A]n inordinate delay between the time a crime is committed and the time a defendant is arrested or indicted may violate due process guarantees under the Fifth and Fourteenth Amendments. [Cit.] To find a due process violation where a delay precedes arrest and indictment, courts must find 1) that the delay caused actual prejudice to the defense, *and* 2) that the delay was the product of deliberate action by the prosecution designed to gain a tactical advantage. [Cits.]

*Wooten v. State*, 262 Ga. 876, 878 (2) (426 SE2d 852) (1993). Jackson claims to have shown actual prejudice to his defense from the passage of time, but does not contend that he can satisfy both parts of the test stated in *Wooten*. Instead, he argues *Wooten* was wrong in requiring a dual showing and in requiring a showing of deliberate action designed to gain a tactical advantage because this Court misinterpreted the decisions of the U. S. Supreme Court in *United States v. Lovasco*, 431 U. S. 783 (97 SC 2044, 52 LE2d 752) (1977) and *United States v. Marion*, 404 U. S. 307 (92 SC 455, 30 LE2d 468) (1971). However, the *Marion* court plainly stated as the basis of its ruling both parts of the test adopted in *Wooten*: "No actual prejudice to the conduct of the defense is alleged or proved, and there is no showing that the Government intentionally delayed to gain some tactical advantage over appellees or to harass them." *United States v. Marion*, 404 U. S. at 325. In *Lovasco*, the U. S. Supreme Court made clear that establishment of both parts of the test is required: "proof of prejudice is generally a necessary but not sufficient element of a due process claim, and . . . the due process inquiry must consider the reasons for

the delay as well as the prejudice to the accused." *United States v. Lovasco*, supra, 431 U. S. at 790. In the discussion of reasons for delay, the Court carefully distinguished "investigative delay," which is acceptable, from "delay undertaken by the Government solely 'to gain tactical advantage over the accused,' [cit.]" (id. at 795), which is not acceptable. We conclude, therefore, that *Wooten*'s adoption of a two-part showing of prejudice and intentional delay for tactical advantage was based on a correct reading of the authority on which it was founded and applies to the present case.

The prejudice asserted by Jackson is that his defense was weakened by the absence of witnesses who had died or could no longer be found and by the time-attenuated memories of witnesses who testified. "However, 'any prejudice which results merely from the passage of time cannot create the requisite prejudice.' [Cit.]" *Roebuck v. State*, 277 Ga. 200, 205 (4) (586 SE2d 651) (2003). Jackson "has not demonstrated any prejudice which would not be expected due to the passage of time. After all, the possibility that memories will fade, witnesses will disappear and evidence will be lost are inherent in any extended delay. [Cit.]" *Henderson v. State*, 272 Ga. 621, 623, fn. 3 (532 SE2d 398) (2000). We conclude, therefore, that Jackson has not borne his burden of showing the actual prejudice to his defense arising from delay which would satisfy the first prong of the test set out in *Wooten*. Since, as we held above, the test requires that both prongs be satisfied, Jackson's failure to satisfy the first obviates any need to consider the reasons for the delay.[2] Accordingly, we hold the trial court did not err in denying Jackson's motion to dismiss the indictment for a violation of his right to due process based on pre-indictment delay.

3. Jackson also contends he was denied his Sixth Amendment right to a speedy trial by the passage of 20 months between his arrest and his assertion of his right to a speedy trial. Jackson bases his argument on the traditional balancing process of *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), in which the four factors to be considered are the length of the delay, the reason for the delay and whether this is attributable to the defendant or the state, the

---

[2] Jackson also asserts that *Lovasco* suggested a due process violation could be established by showing reckless disregard of circumstances known to the prosecution. That argument is strengthened by the statement in *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency*, 461 U. S. 555, 563 (103 SC 2005, 76 LE2d 143) (1983), that *Lovasco* held that a claim of due process violation based on pre-indictment delay "can prevail only upon a showing that the Government delayed seeking an indictment in a deliberate attempt to gain an unfair tactical advantage over the defendant or in reckless disregard of its probable prejudicial impact upon the defendant's ability to defend against the charges." However, since we need not reach the second prong of the test, we need not decide whether a delay based on reckless disregard was shown or, if shown, would suffice.

timeliness of the defendant's assertion of the right to a speedy trial, and prejudice to the defendant. We begin with consideration of the length of delay because "engagement in the balancing process is contingent upon the defendant having shown the delay since his arrest or indictment is 'presumptively prejudicial.'" *Wimberly v. State*, 279 Ga. 65, 66 (608 SE2d 625) (2005). The trial court's order is silent on the issue, but Jackson asserts a delay of 20 months is presumptively prejudicial, citing *Boseman v. State*, 263 Ga. 730 (1) (b) (438 SE2d 626) (1994) (27-month delay met the threshold presumption of prejudice). However, as we noted recently, "[t]he assumption that a delay is presumptively prejudicial is improper. . . . [T]he length of delay that will provoke the inquiry into the other factors is necessarily dependent upon the peculiar circumstances of the case. The delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." (Punctuation omitted.) *Wimberly v. State*, supra, 279 Ga. at 66. The peculiar circumstances of the present case include that it was a multi-defendant prosecution for the murder of a police officer 24 years earlier involving vigorous litigation of a broad range of defense motions. Though less than a "complex conspiracy charge," the challenges presented by the passage of time made it more than an "ordinary street crime." Considering that several of the murder prosecutions brought to this Court over the past three years have featured pre-trial delays ranging from 20 to 49 months,[3] "[t]he 'peculiar circumstances' of this case authorize a finding that [Jackson]'s case is being prosecuted with the promptness customary" in such cases. *Wimberly v. State*, supra at 67. However, notwithstanding that the circumstances of the case warrant a finding that the 20-month delay was not presumptively prejudicial, an abundance of caution prompts us to consider the other factors in the balancing process of *Barker v. Wingo*, supra.

The next factor to be addressed after the length of the delay is the reason for the delay. Jackson cites as the reasons for delay several transfers of the case to different judges and prosecutors, co-defendant Wilkinson's change of attorney and motion for severance, and discovery disputes. Of the transfers of the case to different judges, one

---

[3] 28 months, *Hunt v. State*, 278 Ga. 479 (604 SE2d 144) (2004); 31 months, *Little v. State*, 278 Ga. 425 (603 SE2d 252) (2004); 23 months, *Fulton v. State*, 278 Ga. 58 (597 SE2d 396) (2004); 31 months, *Smith v. State*, 277 Ga. 213 (586 SE2d 639) (2003); 25 months, *Baugh v. State*, 276 Ga. 736 (585 SE2d 616) (2003); 21 months, *Barner v. State*, 276 Ga. 292 (578 SE2d 121) (2003); 49 months, *Ramirez v. State*, 276 Ga. 249 (577 SE2d 558) (2003); 20 months, *Wallace v. State*, 275 Ga. 879 (572 SE2d 579) (2002); 20 months, *Thomas v. State*, 275 Ga. 882 (572 SE2d 537) (2002); 28 months, *Braithwaite v. State*, 275 Ga. 884 (572 SE2d 612) (2002); 20 months, *Granville v. State*, 275 Ga. 663 (571 SE2d 759) (2002); 23 months, *Morris v. State*, 275 Ga. 601 (571 SE2d 358) (2002).

occurred as a result of a motion to recuse by Wilkinson, not attributable to the State or to Jackson, but another transfer resulted from Jackson's motion to recuse. Any delay from that transfer weighs more heavily against Jackson. While Jackson points to changes in prosecutors assigned to the case as causes of delay, since he does not suggest how those changes resulted in delay or that any delay for that reason was deliberate, we regard those changes as neutral. Delay attributable to Wilkinson's change of counsel and motion for severance cannot fairly be weighed against either side. The State's choice after severance to try Wilkinson, who remained incarcerated, before Jackson who was on bond weighs against the State, but since Wilkinson pled guilty, the delay for that purpose was minor. Reviewing the record of discovery disputes, we note that while both sides of the litigation appear to have expanded the scope of the discovery issues unnecessarily, the State resisting some discovery requests that ultimately were successful and Jackson seeking very broad discovery but ultimately abandoning some efforts without a ruling, it also appears that the State conceded certain contested issues and that many of Jackson's requests were appropriate. Discovery disputes, therefore, constitute a neutral factor in the delay. Balancing the factors contributing to the delay, we find them on the whole neutral.

Considering the factor of the timeliness of Jackson's assertion of his right to a speedy trial, his post-arrest, pre-indictment failure to assert his right to a speedy trial can hardly be counted heavily against him since he was indicted less than a month after his arrest. Compare *Haisman v. State*, 242 Ga. 896 (2) (252 SE2d 397) (1979), where 17 months elapsed between arrest and indictment without any assertion of speedy trial rights. However, the 19 months that elapsed between indictment and Jackson's assertion of his right to a speedy trial weighs against him. *Nelloms v. State*, 274 Ga. 179 (1) (549 SE2d 381) (2001).

Lastly, we turn again to the question of prejudice. "The fourth *Barker* factor is assessed in light of three interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. [Cit.]" *Brown v. State*, 264 Ga. 803, 804 (2) (450 SE2d 821) (1994). Concerning oppressive pretrial incarceration, although the 13 months Jackson spent in jail was a substantial period, his failure to identify " 'oppressive factors beyond those that necessarily attend imprisonment' [cit.]" (*Thomas v. State*, 274 Ga. 492, 495 (555 SE2d 693) (2001)), prevents a finding in his favor regarding that issue. With regard to causing anxiety and concern to the accused, Jackson asserts that was shown by the loss of his job, the break-up of his marriage, financial difficulties, and illness. While some of those difficulties are certainly associated with the fact of his arrest and

prosecution for murder, Jackson has not shown that they were specifically caused by the delay in his prosecution. Finally, and most importantly (*Barker v. Wingo*, supra), we consider impairment of the defense. The prejudice of which Jackson complains here is not related to any delay arising after his arrest and indictment, but the prejudice associated with the passage of years since the crime was committed.

On balance, since the reasons for the delay considered here are essentially neutral, the timeliness of the assertion of the right to a speedy trial is weighed against Jackson, and no undue prejudice associated with the delay has been shown, consideration of the factors enunciated in *Barker v. Wingo*, supra, lead to the conclusion Jackson was not denied his Sixth Amendment right to a speedy trial.

4. During direct examination of a witness for the State, the witness and the prosecuting attorney each referred once to certain persons on the list of possible witnesses submitted by the defense as "defense witnesses." Contending such a reference suggested that Jackson had some duty to present evidence and thereby shifted the burden of proof to him, Jackson moved for a mistrial. The trial court denied the motion and took curative action, telling the jury to disregard any reference to defense witnesses, giving an extensive instruction on the State's burden of proof, including the point that the burden never shifts to the defense, and admonishing the prosecution for suggesting or implying the defense had any obligation to call witnesses. To the extent the phrase "defense witness" could be seen as suggesting the defense had any burden of proof, the trial court's curative measures were sufficient to preserve Jackson's rights in that regard. The trial court did not abuse its discretion in denying the motion for mistrial. *Nelson v. State*, 262 Ga. 763 (5) (426 SE2d 357) (1993).

5. The trial court excluded any in-court identification of Jackson by Rutledge on the ground the procedure was suggestive because Rutledge had been unable to identify Jackson from the single recent photo she was shown. However, the trial court permitted testimony that Rutledge, in viewing a photo lineup, had picked out a picture of Jackson from the period of the crime. Jackson contends the trial court erred in failing to suppress evidence of the out-of-court identification, arguing the procedure was impermissibly suggestive because Rutledge was shown a photo of Jackson and was told that he was in the photo lineup she was shown. "This is a case, however, where the officer already had the suspect's name and was using investigatory techniques to confirm his identity. It was more 'a matter of detection' than an identification procedure, such as a lineup. [Cit.]" *Hansberry v. State*, 260 Ga. App. 480, 481 (2) (580 SE2d 274) (2003). This was not a situation in which a witness was attempting to pick an unknown person out of a group of photos. Rutledge had already identified

Jackson to the police as "TJ," a friend of her ex-husband who had participated with Wilkinson in the robbery and murder. Her recognition of Jackson's photo was not intended as an independent identification, but as confirmation that he was the person she had identified by name. Under those circumstances, there was no error in permitting testimony of the photo lineup identification. Id.

*Judgment affirmed. All the Justices concur, except Fletcher, C. J., who concurs in Divisions 1, 2, 4 and 5, and in the judgment.*

DECIDED JUNE 16, 2005.

*Zell & Zell, Rodney S. Zell,* for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney, Thurbert E. Baker, Attorney General, Vonnetta L. Benjamin, Assistant Attorney General,* for appellee.