[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-15616
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 23, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-02172-CV-CAP-1

TERRY JACKSON,

Petitioner-Appellant,

versus

STEPHEN BENTON,
Warden,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 23, 2009)

Before TJOFLAT, DUBINA and KRAVITCH, Circuit Judges.

PER CURIAM:

Terry Jackson, a Georgia state prisoner, appeals the district court's denial of

his 28 U.S.C. § 2254 petition for habeas relief.  For the reasons that follow, we affirm.

In 1975, an Atlanta police officer was killed during a robbery at a hotel. Although the investigation continued into the early 1980s, no arrest was made until September 1999, when Jackson and another man were arrested on charges of murder and felony murder.[1]  The two men were formally indicted in state court on these charges on October 12, 1999.

Beginning in 2000, Jackson filed numerous motions to dismiss his indictment on the grounds that the pre-indictment delay violated his due process rights.  In 2000 and 2001, the case was transferred between judges several times. In May 2001, Jackson moved for a speedy trial and the trial was set for April 16, 2002.  Jackson then filed a motion to dismiss on the ground that his right to a speedy trial had been violated.  In 2002, Jackson filed two motions for continuances, which the court granted.  The state court denied the numerous motions to dismiss and trial was reset for July 16, 2002.  Jackson ultimately was convicted and sentenced to life imprisonment.

On direct appeal, Jackson (1) challenged the pre-indictment delay and (2) reiterated his speedy trial claim.  First, Jackson argued that the state court in

---

[1] Jackson also was charged with robbery and aggravated assault, but those charges were quashed after Jackson filed motions to dismiss based on the statute of limitations.

Wooten v. State, 426 S.E.2d 852 (Ga. 1993), misunderstood the standard for pre-indictment due process violations set forth in United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), and United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), and erroneously interpreted these cases to require that a defendant must show both actual prejudice and that the delay was the product of deliberate action designed to gain a tactical advantage. Rather, according to Jackson, the Court in Marion simply agreed with the government's concession that a showing of both prejudice and intent would violate due process but did not establish this as an affirmative requirement. Jackson then asserted that the Court in Lovasco confirmed that both prongs were not necessary. Applying the cases to his conviction, Jackson explained that he suffered actual prejudice because the more than twenty-year delay in his case rendered him unable to present a defense or impeach witnesses, and that this was sufficient to establish a due process violation. Addressing his speedy trial claim, Jackson asserted that the length of the delay, the reasons for the delay, his assertion of his right, and the prejudice he suffered all established the violation.

The Georgia Supreme Court affirmed Jackson's convictions. Jackson v. State, 614 SE.2d 781 (Ga. 2005). In reaching its conclusions, the state supreme court noted that Jackson had not claimed he could meet both prongs of the due

3

process test set forth in Wooten, but instead had argued that state courts were wrong in their application of Wooten. The Georgia Supreme Court concluded that Wooten properly applied the U.S. Supreme Court precedent and that Jackson had not shown any actual prejudice. 614 S.E.2d at 783-84. Addressing Jackson's speedy trial claim, the state supreme court analyzed the factors set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). First, the court found that the length of the delay was not presumptively prejudicial and that the length of time between Jackson's arrest and the trial was acceptable under the circumstances of the case. Id. at 784-85. Although it denied relief on this factor, the state supreme court also analyzed the remaining Barker factors, concluding that reasons for the delay - transfers to different judges - did not weigh in favor of either side. The court then found that the length of time between Jackson's arrest and the assertion of his right weighed against Jackson. Finally, the court concluded that Jackson had not shown prejudice related to the time between arrest and trial, as his complaints addressed the pre-indictment delay. Id. at 453-54. Jackson then filed the instant § 2254.[2]

---

[2] Jackson raised four issues in his § 2254 petition. After denying the petition, the district court granted a certificate of appealability ("COA") without specifying the issues. This court remanded with instructions for the district court to identify the issues for the COA. The district court then limited the COA to the due process and speedy trial issues. Because this court is limited to those issues identified in the COA, we do not address Jackson's other claims. Murray v. United States, 145 F.3d 1249, 1250-51 (11th Cir. 1998).

The magistrate judge recommended denying the habeas petition. First, the magistrate judge determined that the state court's interpretation in Wooten was consistent with the federal case law. The district court then found that Jackson had not shown that the state court's decision was an unreasonable determination of the facts and that Jackson had not established prejudice. Addressing the speedy trial claim, the district court found that the state court properly applied the Barker factors and nothing in the state court's decision was contrary to federal law.

The district court adopted the recommendation, over Jackson's objections, and denied habeas relief. The district court then granted Jackson's application for a certificate of appealability ("COA") on the due process and speedy trial issues.

In reviewing the district court's denial of habeas relief, factual findings are reviewed for clear error, and questions of law are reviewed de novo.[3] Nyland v. Moore, 216 F.3d 1264, 1266 (11th Cir. 2000).

Pursuant to the AEDPA,

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim- (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that

---

[3] Jackson filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-32, 110 Stat. 1214 (1996), and, therefore, the provisions of that act govern this appeal.

5

was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2). Furthermore, a state court's factual findings are presumed correct unless rebutted by the petitioner with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000).

A state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. Id. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. Id. Notably, an "unreasonable application" is an "objectively unreasonable" application. Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court

6

decision." <u>Williams</u>, 529 U.S. at 412.

1. Pre-indictment Delay

Jackson first argues that the pre-indictment delay violated his due process rights and that the state court incorrectly interpreted case law to require a petitioner to show both prejudice and deliberate intent. He then argues that the delay in his case resulted in actual prejudice by hampering his ability to make his defense case and that the reasons for the delay were the result of lack of investigation by the police due to laziness and negligence.

The statute of limitations is the primary safeguard against the government bringing overly-stale criminal charges. <u>Marion</u>, 404 U.S. at 322, 92 S.Ct. at 464. However, when a defendant shows actual, substantial prejudice, due process may require dismissal of an indictment, brought within the statutory period, if the government intentionally delayed prosecuting the case in order to gain a tactical advantage over the accused. <u>Id.</u> at 324, 92 S.Ct. at 465. Although actual prejudice is a necessary element of a due process claim, it is not, standing alone, sufficient to support dismissal. <u>Lovasco</u>, 431 U.S. at 790, 97 S.Ct. at 2048-49. "[T]he due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." <u>Id.</u>

Accordingly, in order to obtain dismissal based on pre-indictment delay, a

7

defendant must show both deliberate delay to gain a tactical advantage and actual prejudice. Stoner v. Graddick, 751 F.2d 1535, 1542-43 (11th Cir. 1985). With regard to deliberate delay in order to gain a tactical advantage, the Supreme Court has made clear that "investigative delay is fundamentally unlike delay undertaken by the Government solely to gain tactical advantage over the accused." Lovasco, 431 U.S. at 795, 97 S.Ct. at 2051 (quotation marks omitted). Prejudice is not presumed based on a lengthy delay, but rather actual prejudice must be shown in each case. Stoner, 751 F.2d at 1544. The prejudice must be such that it impairs the fairness of the defendant's trial. United States v. Solomon, 686 F.2d 863, 871 (11th Cir. 1982). Moreover, the prejudice must "rise to constitutional proportions" in order to support dismissal. United States v. Benson, 846 F.2d 1338, 1342 (11th Cir. 1988). This court has recognized that the standard is an exceedingly high one. Tiemens v. United States, 724 F.2d 928, 929 (11th Cir. 1984).

Here, the state court's decision was not contrary to or an unreasonable application of federal law. First, the state court properly applied Wooten, which correctly outlines the standard for pre-indictment delay as set forth in Marion and Lovasco. As this court has held, the petitioner must show both prejudice and deliberate intent. Stoner, 751 F.2d at 1544. Thus, Jackson has not shown that the state court misapplied federal law. Notably, Jackson relies on his claim of

8

prejudice and does not argue that the delay was designed to obtain a tactical advantage. As such, his claim fails.

2. Right to a Speedy Trial

Jackson next argues that the excessive delay between his arrest and his trial was a constitutional violation.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI. In determining whether a defendant's right to a speedy trial was violated, the following four factors are considered: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Barker, 407 U.S. at 530, 92 S.Ct. at 2192.

"The first factor serves a triggering function; unless some 'presumptively prejudicial' period of delay occurred, we need not conduct the remainder of the analysis." United States v. Register, 182 F.3d 820, 827 (11th Cir. 1999). "A delay is considered presumptively prejudicial as it approaches one year" from indictment to trial. United States v. Schlei, 122 F.3d 944, 987 (11th Cir. 1997); see also United States v. Harris, 376 F.3d 1282, 1290 (11th Cir. 2004) (explaining that a delay of 18 months is presumptively prejudicial). When calculating the length of the delay, any delay caused by the petitioner should not be included. Hill v.

9

Wainwright, 617 F.2d 375, 378 (5th Cir. 1980).[4]

If the first three factors do not weigh heavily against the government, the petitioner must show that he suffered actual prejudice from the delay in his trial. United States v. Davenport, 935 F.2d 1223, 1239 (11th Cir. 1991).

Here, the crux of Jackson's argument is that the state court misapplied the factors; he does not contend that the court applied the wrong law or misinterpreted the facts. Our review of the state court's opinion confirms that the court properly applied Barker.

With respect to the first factor, Jackson was arrested in 1999 and moved for a speedy trial in May 2001. The trial ultimately was set for July 2002. Notably, although the state court erred by concluding that the length of time was not presumptively prejudicial in light of this court's holding, Schlei, 122 F.3d at 987, the court did consider the remaining Barker factors as it would have been required to do once the time period "triggered" the presumption.

Second, the state court found the reasons for the delay did not weigh heavily against either side. The court considered that the reasons included several transfers to different judges and prosecutors and discovery issues. Jackson himself initiated several of these delays by seeking to have a judge recuse herself and by filing

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), this court held that all decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.

10

motions for continuances. Third, the court concluded that the timeliness of Jackson's assertion weighed against him because he waited more than nineteen months following his arrest to assert his right.

Finally, because the first three factors did not weigh heavily against the government, Jackson was required to show actual prejudice. As the state court correctly found, Jackson did not meet his burden.

In determining actual prejudice, we consider three factors: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. Barker, 407 U.S. at 532, 92 S.Ct. at 2193. Here, Jackson contends that jail is by its nature oppressive, and the accusations against him resulted in the loss of his marriage, home, and job. As the state court found, however, Jackson cannot show that these were the result of the delay in his trial rather than simply the result of the charges against him.

In sum, Jackson has not shown that the state court's decision was contrary to or an unreasonable application of federal law; rather he simply quibbles with the state court's application of the Barker factors. This is insufficient to entitle him to habeas relief.

Accordingly, we AFFIRM the district court's denial of habeas relief.

11