**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 24, 2018**

# In the Court of Appeals of Georgia

A18A0086. BEAVERS v. THE STATE.

ELLINGTON, Presiding Judge.

Under an indictment returned on November 19, 2015, Terence Beavers stands accused in the Superior Court of Cobb County of kidnapping, aggravated sodomy (two counts), and rape. Beavers filed a plea in bar, arguing that prosecution of the offenses, which involved a single attack twenty years earlier on March 26, 1994, was barred by the applicable statutes of limitation. After a hearing, the trial court rejected the plea in bar, based on a finding that the State had proved that the case falls within a Code section that tolls the statutory period of limitation applicable to certain offenses, including those charged in the subject indictment, "when deoxyribonucleic acid (DNA) evidence is used to establish the identity of the accused[.]" OCGA § 17-

3-1 (d).[1] We granted Beavers's application for interlocutory review. Because the General Assembly expressly provided that the Act that established the DNA-identification tolling provision would apply to crimes which occurred on or after July 1, 2002, we reverse.

"In criminal cases, the period of limitation runs from the commission of the offense to the date of the indictment. The burden is on the State to prove that a crime occurred within the applicable statute of limitation." (Citation and punctuation omitted.) *Flournoy v. State*, 299 Ga. App. 377, 378 (1) (682 SE2d 632) (2009).[2] "On appeal from the grant or denial of a plea in bar, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, as here, we review

---

[1] As will be discussed below, the DNA-identification tolling provision was created in 2002, initially codified as OCGA § 17-3-1 (c.1) (2002), and redesignated as subpart (d) of OCGA § 17-3-1 in 2012. See n. 9, infra.

[2] See also *Scales v. State*, 310 Ga. App. 48, 50 (1) (712 SE2d 555) (2011) ("[T]he burden is unquestionably upon the State to prove that a crime occurred within the statute of limitation, or, if an exception to the statute is alleged, to prove that the case properly falls within the exception. Thus, although the statute of limitation is not an element of the crime, per se, in a prosecution, where an exception is relied upon to prevent the bar of the statute of limitation, it must be *alleged* and *proved*.") (citations and punctuation omitted; emphasis in original).

2

de novo the trial court's application of the law to the undisputed facts." (Citation and punctuation omitted.) *State v. Mullins*, 321 Ga. App. 671 (742 SE2d 490) (2013).[3]

Beavers contends that the DNA-identification tolling provision does not apply to these offenses because they occurred before July 1, 2002, and that the trial court therefore erred in rejecting his plea in bar.

When these offenses occurred on March 26, 1994, the offenses of kidnapping (other than kidnapping for ransom and kidnapping where the person kidnapped received bodily injury) and aggravated sodomy were punishable by imprisonment for not less than one nor more than twenty years.[4] Consequently, the statutory period of

---

[3] See also *Duke v. State*, 298 Ga. App. 719, 720 (1) (681 SE2d 174) (2009) ("The appellate standard of review for a plea in bar asserting a statute of limitations defense is a de novo review of the issue of laws." Where a trial court's ruling "involves a mixed question of fact and law, we accept the trial court's findings on disputed facts and witness credibility unless they are clearly erroneous, but independently apply the law to the facts.") (citations and punctuation omitted).

[4] OCGA § 16-5-40 (b) (1982) ("A person convicted of the offense of kidnapping shall be punished by imprisonment for not less than one nor more than 20 years, provided that a person convicted of the offense of kidnapping for ransom shall be punished by life imprisonment or by death and provided, further, that, if the person kidnapped shall have received bodily injury, the person convicted shall be punished by life imprisonment or by death."); Ga. L. 1982, p. 970 (Act. No. 158, § 1); OCGA § 16-6-2 (b) (1968) ("A person convicted of aggravated sodomy shall be punished by imprisonment for life or by imprisonment for not less than one nor more than 20 years."); Ga. L. 1968, p. 1249 (Act No. 259, § 1).

limitation for these offenses was four years.[5] Absent any tolling of the limitation period, no indictment on these offenses could be brought after March 26, 1998.

As to the rape charge, in March 1994, the offense of rape was punishable by death or by imprisonment for life, or by imprisonment for not less than one nor more than 20 years.[6] Initially, then, the statutory period of limitation for rape was seven years.[7] In 1996, before the seven-year period ran with regard to the rape charge in this case, the statutory period of limitation for forcible rape was lengthened to fifteen

---

[5] OCGA §§ 17-3-1 (1987) (Former Ga. Code. Ann. § 26-502) (a) ("A prosecution for murder may be commenced at anytime."), (b) ("Prosecution for other crimes punishable by death or life imprisonment must be commenced within seven years after the commission of the crime."), (c) (" Prosecution for felonies other than those specified in subsections (a) and (b) of this Code section must be commenced within four years after the commission of the crime, provided that prosecution for felonies committed against victims who are at the time of the commission of the offense under the age of 14 years must be commenced within seven years after the commission of the crime."); Ga. L. 1968, p. 1249 (Act No. 259; Ga. L. 1987, p. 330 (Act No. 51, § 1) . Absent any allegation that the victim was under 16 years of age on the date of the violation, as in this case, a tolling provision established in OCGA § 17-3-2.1 (1992) does not apply. See Ga. L. 1992, p. 2973 (Act No. 475, § 1).

[6] OCGA § 16-6-1 (b) (former Ga. Code Ann. § 26-2001) (1978) ("A person convicted of rape shall be punished by death or by imprisonment for life, or by imprisonment for not less than one nor more than 20 years."); Ga. L. 1978, p. 3 (Act No. 1, § 1).

[7] OCGA § 17-3-1 (b) (1987) (quoted in n. 5, supra).

4

years, and it remains so today.[8] Absent any tolling, therefore, no indictment could be brought after March 26, 2009.

As noted above, the subject indictment was returned in November 2015. The indictment invoked the DNA-identification tolling provision, OCGA § 17-3-1 (d),[9] with the following coda:

TOLLING PROVISION

For each of the aforementioned counts of this Indictment to which the statute of limitations applies, [kidnapping, aggravated sodomy, and rape,] pursuant to OCGA § 17-3-1, the Grand Jurors aforesaid also find that deoxyribonucleic acid (DNA) evidence was used to establish the identity of the accused . . . ; to wit: said accused was positively identified as having committed the aforementioned crimes by use of DNA results that were obtained on May 22, 2014.[[10]]

_____

[8] OCGA § 17-3-1 (b) (1996); Ga. L. 1996, p. 1115 (Act No. 265, § 4). See *Flournoy*, 299 Ga. App. at 378-379 (1).

[9] The DNA-identification tolling provision was enacted as Ga. L. 2002, pp. 650-651 (Act No. 785, § 1) and initially codified as OCGA § 17-3-1 (c.1) (2002). In 2012, the General Assembly redesignated subpart (c.1) of OCGA § 17-3-1 as subpart (d). Ga. L. 2012, pp. (Act 709, § 4-1), effective July 1, 2012.

[10] The record shows that Beavers provided buccal swabs in April 2014, in connection with being released from prison (on an unrelated conviction). Around the same time, in late March 2014, swabs of suspected semen taken from the victim's body immediately after the March 1994 assault were submitted to the Georgia Bureau of Investigation to be tested for male DNA. On April 21, 2014, the crime lab reported to the

5

We conclude, however, that the DNA-identification tolling provision did not apply in this case. As referenced above, the General Assembly expressly provided, in Section 2 of the Act that established the DNA-identification tolling provision, that the Act would "be effective on July 1, 2002, and apply to crimes which occur on or after July 1, 2002[.]"[11] The State's reliance on OCGA § 17-3-1 (d) is therefore futile with regard to crimes that occurred before the date specified in the 2002 Act.[12]

---

Marietta Police Department that the swabs revealed the presence of male DNA and that the samples would be submitted for DNA testing. On May 22, 2014, the crime lab reported to the Marietta Police Department that Beavers's DNA in the federal CODIS database matched that of the DNA evidence obtained from the victim's body in March 1994. See *Williams v. State*, 300 Ga. 218, n. 2 (794 SE2d 157) (2016) ("CODIS is the Federal Bureau of Investigation's Combined DNA Index System, which includes all 50 states and some federal agencies; it collects DNA profiles given by local laboratories, which DNA is taken from arrestees, convicted offenders, and forensic evidence found at crime scenes.") (citation omitted). On June 10, 2014, the GBI received Beavers's April 2014 buccal swabs and reconfirmed that Beavers's DNA matched that of the DNA evidence obtained from the victim's body. See n. 20, infra.

[11] Ga. L. 2002, p. 651 (§ 2).

[12] See *State v. Walker*, 342 Ga. App. 733, 734 (805 SE2d 262) (2017) (Because the General Assembly expressly provided in the Act that the revised Child Hearsay statute, OCGA § 24-8-820, "shall become effective on July 1, 2013, and shall apply to offenses which occur on or after that date," while "[a]ny offense occurring before July 1, 2013, shall be governed by the statute in effect at the time of such offense," Ga. L. 2013, p. 222 (Act No. 84, § 21), the trial court correctly applied the former Code section to an offense that took place in 2011.); *State v. Hill*, 321 Ga. App. 679, 681 (742 SE2d (2013) (Because the General Assembly plainly and unambiguously expressed its intent that an Act amending a rule of appellate procedure "shall become effective on July 1, 2012, and shall apply to

6

The State disputes this, arguing that Section 2's effective date conflicted with language in the preamble to the Act identifying as the purpose of the Act "to provide that a prosecution for serious violent offenses may be commenced at any time under certain circumstances[.]"[13] There is no such conflict. That the offense at issue have occurred "on or after July 1, 2002" was plainly one of the "certain circumstances" expressly specified in the Act. At any rate, the preamble to an act, where the provisions of the preamble are not included in the body of the act, "is no part [of the act] and cannot control the plain meaning of the body of the act." *State v. Ware*, 282 Ga. 676, 678 (653 SE2d 21) (2007).[14] Here, the plain meaning of the body of the 2002 Act, which specifies by date the crimes to which the new tolling provision shall apply, is controlling. Id. The DNA-identification tolling provision does not apply in this case.

---

offenses which occur on or after that date. Any offense occurring before July 1, 2012, shall be governed by the statute in effect at the time of such offense," Ga. L. 2012, p. 899 (Act No. 709, § 9-1 (a)), the trial court correctly applied the former Code section to offenses that took place between January 1, 2007, and June 30, 2011.).

[13] Ga. L. 2002, p. 650 (Act 785, preamble).

[14] Cf. *City of Marietta v. Summerour*, 302 Ga. 645, n. 3 (807 SE2d 324) (2017) (A codified preamble is part of the act and may be considered in determining the intent of the General Assembly.).

Alternatively, the State argues that the statutory periods of limitation were tolled under the person-unknown tolling provision, OCGA § 17-3-2 (2),[15] because "it was not until the DNA match in 2014 that [Beavers] was positively confirmed to be the perpetrator."[16] The record shows that the State raised the person-unknown tolling provision in connection with an earlier, later abandoned, indictment, but did not include it as a basis for tolling in the subject indictment.[17] Under controlling authority, moreover, the person who committed a crime is not "unknown" within the terms of OCGA § 17-3-2 (2) simply because his identity has not been positively confirmed by forensic evidence. Rather, the person-unknown tolling exception

[15] OCGA § 17-3-2 (2) provides: "The period within which a prosecution must be commenced under Code Section 17-3-1 or other applicable statute does not include any period in which . . . [t]he person committing the crime is unknown or the crime is unknown[.]"

[16] The State concedes that Beavers's name was known to the Marietta Police Department and that he was identified as the suspect in police reports, but avers that "the police did not find him."

[17] The record shows that the State first secured an indictment against Beavers in May 2015. In that indictment, the State alleged that the identity of the accused was not known to the State until July 11, 2014. After Beavers filed a plea in bar showing that he had been identified as the only suspect when the DNA evidence was collected shortly after the attack on the victim, the State returned to the Grand Jury and secured the subject indictment, premised on the DNA-identification tolling provision. The State abandoned the May 2015 indictment and the unknown-person tolling provision.

8

applies only where "there is *no identified suspect* among the universe of all potential

suspects." (Emphasis added.) *Jenkins v. State*, 278 Ga. 598, 603 (1) (A) (604 SE2d

789) (2004). As the Supreme Court of Georgia explained:

> The tolling exception to the statute of limitations cannot be based upon
> the subjective opinion of the district attorney as to whether there was
> enough evidence to file charges against a particular person. Otherwise,
> there would be tolling of the statute of limitations for routine
> investigation into a crime; the State could build a case against a
> non-murder suspect[18] for five or ten years and then file charges when
> it believes that it has obtained sufficient evidence by claiming that the
> statute of limitations was tolled until that moment. Such a broad
> interpretation of the tolling period would permit the exception to
> swallow the rule.

Id. In *Jenkins*, the evidence showed that the State had actual knowledge of the

defendant's identity as a suspect for the crimes shortly after they were committed, just

as in this case. Id. The State's failure to obtain an indictment within the time allowed

required the dismissal of all non-murder charges due to the expiration of the statute

of limitation. Id. (rejecting the argument that the State did not have "actual

---

[18] It has long been the rule in Georgia that there is no applicable statute of limitation for the offense of murder. *Wooten v. State*, 262 Ga. 876, 880 (3) (426 SE2d 852) (1993); see OCGA § 17-3-1 (a) ("A prosecution for murder may be commenced at anytime.").

9

knowledge" of the suspect's identity until the prosecution received a match to a palm

print in a fingerprint database).[19] Similarly, in this case, Beavers was identified as the

primary suspect in the immediate aftermath of the attack in March 1994. The person-

unknown tolling provision does not apply in this case.

------

[19] See also *State v. Boykin*, 320 Ga. App. 9, 11 (3) (739 SE2d 16) (2013) (Where investigators identified two suspects in a 1994 rape case almost immediately after the crime occurred and considered the defendant "the prime suspect" throughout the investigation, and the defendant was not indicted until 2011, after the State discovered a putative match between the defendant's DNA and that found on the alleged victim's underwear, the evidence unequivocally showed that the State had actual knowledge of the defendant's identity in 1994. Consequently, the person-unknown tolling provision did not apply and the prosecution was barred as untimely.). The cases cited by the State, in which the identity of the perpetrator of a rape was completely unknown until investigators received notice of a DNA match, and, therefore, the person-unknown tolling provision applied, are inapposite. See *Scales v. State*, 310 Ga. App. at 50 (1); *Leftwich v. State*, 299 Ga. App. 392, 397 (2) (b) (682 SE2d 614) (2009), disapproved of on other grounds by *Martin v. McLaughlin*, 298 Ga. 44, n. 3 (779 SE2d 294) (2015); *McKeehan v. State*, 274 Ga. App. 14, 16 (2) (616 SE2d 489) (2005) (Where the State presented evidence that investigators were unable to identify a suspect until they received a DNA match to the defendant, and the trial court submitted to the jury the issue of whether the prosecution was brought within the time allowed under the statute of limitation, the person-unknown tolling provision applied.); see also *Higgenbottom v. State*, 290 Ga. 198, 204 (3) (719 SE2d 482) (2011) (Where a medical examiner's report stated that a baby's death in 1992 was a result of accident, and investigators only learned from a superseding medical examiner's report issued in 2007 that the death resulted from criminal wrongdoing, the evidence did not support a finding that the State had actual knowledge that there was criminal wrongdoing resulting in the fatality, much less that the defendant would be charged as the perpetrator of the baby's death, and the tolling provision in OCGA § 17-3-2 (2) applied.).

The State having failed to carry the burden of showing that a crime occurred within the applicable periods of limitation, the trial court erred when it denied Beavers's plea in bar. *Jenkins v. State*, 278 Ga. at 601-603 (1) (A); *State v. Boykin*, 320 Ga. App. 9, 11 (3) (739 SE2d 16) (2013).[20]

*Judgment reversed. Bethel, J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[20] With consternation we note that the May 22, 2014 GBI report suggests that Beavers's DNA profile that was matched to the DNA evidence taken from the victim's body in 1994 was derived – not from the buccal swabs collected in April 2014 – but from buccal swabs collected from Beavers in some previous process, received by the crime lab *in January 2001*, and presumably added to the CODIS database then. As noted above, the limitation period for rape did not expire *until March 2009*. We must leave it to others to explain why the victim's rape kit was not submitted to be tested for male DNA until March 2014. The denial of justice to the victim from this delay surely shocks the conscience.