311 Ga. 607
FINAL COPY

S21A0066.  KESSLER v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Dana Michael Kessler was convicted of felony murder and related offenses in connection with the shooting death of Jeffrey Morgan, Jr.[1]  On appeal, Kessler raises three claims

---

[1] On August 20, 2013, a Muscogee County grand jury jointly indicted Kessler and Timothy Robinson for four counts of felony murder predicated on aggravated assault, armed robbery, aggravated assault with intent to rob, and violating the Georgia Controlled Substances Act (Counts 1-4); one count of malice murder (Count 5); two counts of aggravated assault (Counts 6 and 7); one count of violating the Georgia Controlled Substances Act (Count 8); armed robbery (Count 9); hijacking a motor vehicle (Count 10); possession of a firearm during the commission of a crime (Count 11); possession of marijuana with intent to distribute (Count 12); and possession of a firearm by a convicted felon (Count 13).

At a joint jury trial from October 28 through November 7, 2013, Kessler was found guilty of four counts of felony murder (Counts 1-4), two counts of aggravated assault (Counts 6 and 7), and possession of a firearm during the commission of a crime (Count 11).  Kessler was acquitted of the remaining charges, except Count 13, which was nolle prossed.  Kessler was sentenced to life in prison without the possibility of parole for Count 1 and five years in prison consecutive for Count 11.  All remaining counts were merged for sentencing purposes.  Kessler filed a motion for new trial on November 19, 2013, which he amended on March 6, 2017, and amended a second time through new counsel on November 27, 2019.  After a hearing, the trial court denied the motion as amended on March 4, 2020.  Kessler timely filed a notice

of trial court error and argues that the cumulative effect of these errors requires the reversal of his convictions and entitles him to a new trial. We affirm.

1. Relevant to this appeal,[2] the evidence presented at trial showed that, on April 6, 2012, Kessler's co-defendant Timothy Robinson arranged to purchase marijuana from Morgan. That afternoon, Morgan and his friend, Shatoric Hinton, drove separately to the parking lot of an apartment complex located on Martin Luther King, Jr. Boulevard in Muscogee County. Hinton testified that, prior to the drug transaction, Morgan parked his green Mazda next to Hinton's white SUV. Hinton got out of his SUV and sat in the front passenger's seat of Morgan's Mazda while Morgan remained in the driver's seat.

Then, a gray Mitsubishi Galant pulled into the same parking

---

of appeal, which was docketed to the term of this Court beginning in December 2020, and the case was orally argued on December 10, 2020.

[2] Kessler does not allege that the evidence was insufficient to support his convictions, and this Court no longer routinely reviews the sufficiency of the evidence sua sponte. See *Davenport v. State*, 309 Ga. 385, 391-392 (4) (846 SE2d 83) (2020).

lot.  Kessler and Robinson exited the Galant and headed for Morgan's vehicle while a third man, Edward Love, remained in the back seat of the Galant; Robinson got into the Mazda and sat in the rear driver's side seat behind Morgan while Kessler sat behind Hinton.  Morgan handed a bag of marijuana to Robinson.  Upon seeing the drugs, Kessler stated, "[Y]eah, that's the same thing we had."  When Morgan looked down to retrieve more drugs from the floor, Kessler brandished a gun and pointed it at Morgan.  Morgan said, "Hold on, man. Don't do that. Don't do that. Please, don't do that. . . . Please don't shoot me, man."  Despite Morgan's pleas, Kessler shot Morgan.

After the shooting, Love drove away in the Galant.  Hinton ran from the Mazda and headed to a tire shop across the street.  When he looked back at the scene, he saw Kessler throw Morgan from the driver's seat onto the ground; Kessler then got into the Mazda and drove away.

A short time later, Gregory Rivers, Sr., saw two vehicles — an older car occupied by two men, and Morgan's green Mazda —

traveling down Talley Avenue in Columbus near Rivers' home. The man driving the Mazda parked directly in front of Rivers' driveway. The man exited the Mazda, removed a duffle bag from the trunk, entered the second car with the other two men, and then the group drove off, leaving the Mazda behind.

Rivers called the police; when officers arrived they searched the Mazda and located marijuana on the floorboards and in the front passenger's seat. They also dusted the car for fingerprints, and a set of fingerprints on the rear passenger's side door handle was later matched to Kessler's prints.

A separate set of officers responded to the scene of the shooting at the apartment complex parking lot. When they arrived, they found Morgan lying face down on the ground, with most of his body positioned under Hinton's SUV. Morgan's cell phone was near his body, and his pants were pulled down to his ankles. Officers found small baggies of marijuana, as well as some loose marijuana, by Morgan's feet. Nearby witnesses told the officers that Morgan had been shot and that "they stole his car." An autopsy revealed that

4

Morgan suffered a single gunshot wound to the back right shoulder. The bullet traveled through Morgan's body, piercing his aorta and left lung, causing his death.

Robinson was arrested on April 8, 2012, and gave a statement to officers wherein he admitted: setting up a drug deal with Morgan, arriving at the scene of the crime in a Mitsubishi Galant[3] with other individuals, being in Morgan's car during the drug transaction and when the shooting occurred, and leaving the scene in the Galant and going to another location where Morgan's Mazda was present. Robinson also told officers that a .45 caliber handgun was used in the shooting.

Kessler was arrested later that evening. Officers found him lying on top of a bed fully dressed with his shoes on, and he appeared to be feigning sleep. A Mitsubishi Galant was parked outside of the home, and Kessler's fingerprints were found on the outside of that vehicle. Upon searching the residence, officers found more than 45

---

[3] Robinson told officers that the Galant belonged to a person he only knew as "New York." This nickname was later linked to Kessler.

grams of marijuana hidden throughout the home.

Kessler was taken to the sheriff's office, where he waived his *Miranda*[4] rights and agreed to speak with officers in a video-recorded interview. Though he initially denied any involvement, Kessler eventually admitted that he and his associates attempted to rob Morgan during a drug deal. Specifically, Kessler admitted that he had been in Morgan's car during the drug deal and that he was the only person with a firearm, specifically, a .45-caliber pistol. He told officers that Morgan reached toward the gun, and it accidentally fired. He further admitted that he pulled Morgan out of the car and drove away in the Mazda. He stated that he obtained two bags of marijuana from Morgan's car and that he and some other people divvied up the marijuana and gave it away. Kessler told one of the detectives that he wanted to take full responsibility for the incident.

At trial, Kessler took the stand and testified that he accidentally shot Morgan during a gun sale.

2. Kessler contends that the trial court erred by denying his

---

[4] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

"Motion for Exclusion of Involuntary Admissions and Confessions," arguing that his confession was induced by an impermissible hope of benefit in violation of OCGA § 24-8-824 ("To make a confession admissible, it shall have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury."). It is well settled that

> [t]he trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances. (Citation omitted.) *Vergara v. State*, 283 Ga. 175, 176 (657 SE2d 863) (2008). Although we defer to the trial court's findings of disputed facts, we review de novo the trial court's application of the law to the facts. *Clay v. State*, 290 Ga. 822, 822-823 (725 SE2d 260) (2012). We will not disturb the trial court's factual and credibility determinations unless they are clearly erroneous, *Wright v. State*, 285 Ga. 428, 432 (677 SE2d 82) (2009); however, where controlling facts are not in dispute, such as those facts discernible from a videotape, our review is de novo. *Vergara*, 283 Ga. at 178 (citation omitted).

(Punctuation omitted.) *Norwood v. State*, 303 Ga. 78, 80 (2) (810 SE2d 554) (2018). Applying these principles, we see no error.

Prior to trial, Kessler filed a motion to suppress his custodial statement to officers, arguing that detectives offered him an

7

improper hope of benefit in violation of OCGA § 24-8-824. The trial court denied the motion, generally finding that Kessler made "his statement freely and voluntarily without any hope of benefit or fear of injury." Concerning Kessler's claim of inducement, the trial court concluded, in pertinent part:

> The preponderance of the evidence show[ed] that [Kessler's] statement was not induced by hope of benefit. [Kessler] testified at the motion to suppress hearing and denied thinking that his cooperation with police might result in any reduced sentence. He stated that he thought he would go on to the jail cell to get some sleep. [Kessler] himself did not think he was being offered any reduced sentence for his statement, so [Kessler's] statement was not induced by hope of benefit of a reduced sentence.

On appeal, Kessler points to 15 separate statements, as well as a short colloquy between him and the lead detective, all of which, Kessler argues, show that the officers consistently promised reduced charges or a reduced sentence in order to secure a confession.[5]

---

[5] For example, Kessler claims that the following statements constituted an impermissible hope of benefit: "You're gonna go to prison but how long you go to prison, you still have some control over that"; "Don't let the State of Georgia lock you away and throw away the key. Give them some reason that they can see that you have a chance to be saved, that you have a chance for salvation"; and "Tell me the 'why' in this case. That's the only thing I don't know. And that's the one thing you can cling onto that can change how long you go to prison."

Pretermitting whether any of the disputed statements constituted an impermissible hope of benefit, Kessler's claim fails because none of the allegedly improper statements actually induced him to admit to shooting Morgan.

As this Court has previously explained, the "slightest hope of benefit refers to promises related to reduced criminal punishment — a shorter sentence, lesser charges, or no charges at all." (Citation and punctuation omitted.) *Budhani v. State*, 306 Ga. 315, 325 (2) (b) (830 SE2d 195) (2019). However, pursuant to OCGA § 24-8-824, "establishing that law enforcement has promised an impermissible hope of benefit is not itself sufficient" to render a confession inadmissible, as the hope of benefit must "actually *induce* the defendant's statements." (Citation and punctuation omitted; emphasis supplied.) Id. at 326 (2) (b).

At a pre-trial *Jackson-Denno*[6] hearing, Kessler testified and specifically denied that his motivation for confessing was based upon a hope that doing so would lead to reduced charges or a reduced

_____

[6] See *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

9

sentence.  Moreover, at trial, Kessler testified that when he gave "an admission" to the lead detective, it was "because we just had a nice conversation talking about God and everything.  And he came in there with my Bible because I carry a Bible on me."  See OCGA § 24-8-825 ("The fact that a confession has been made under a spiritual exhortation, a promise of secrecy, or a promise of a collateral benefit shall not exclude it.").  Finally, the video-recorded interview shows that Kessler made no admissions and did not confess immediately after any of the disputed statements; instead, Kessler confessed to shooting Morgan approximately 20 minutes after the final allegedly improper statement.  Based on the foregoing, we conclude that the trial court did not err in finding that Kessler's confession was not induced by any improper hope of benefit under OCGA § 24-8-824 and did not err in denying Kessler's motion to suppress his custodial statement on this ground.  See *Pulley v. State*, 291 Ga. 330, 333 (2) (729 SE2d 338) (2012) (holding that law enforcement promises alone are insufficient to render a confession inadmissible and that "[t]here must also be a *causal connection* between the police conduct and the

10

confession." (Citation and punctuation omitted; emphasis in original)). See also *State v. Brown*, 308 Ga. App. 480, 489 (2) (708 SE2d 63) (2011) (holding that even if officers' promises to the defendant created an improper hope of benefit, the officers' statements did not "actually induce" the defendant's confession), aff'd, *Brown v. State*, 290 Ga. 865, 870 (2) (c) (725 SE2d 320) (2012).

3.    Kessler argues that the trial court erred by not granting his motion for mistrial when the prosecutor allegedly made improper statements during closing argument.[7] During the State's closing, the prosecutor stated:

> Now, as far as the verdict form goes, you're going to see — you're going to see on there what's called lesser included crimes and you'll see felony murder — or you'll see like malice murder and then felony murder. And then you'll see under that involuntary manslaughter. I submit to you, you should disregard involuntary manslaughter. That is a misdemeanor and that is not in this case. They want you to let these two thugs get away with robbing and killing somebody and it being a misdemeanor. It is not. It is based on reckless conduct. Well, yes, armed robbery could be considered reckless, but armed robbery is a felony. It is not a misdemeanor and it does not fit

[7] Because of the joint jury trial, the order of closing arguments was as follows: first, counsel for Robinson; second, counsel for Kessler; and third, the prosecutor.

11

involuntary manslaughter. It is felony murder —

Kessler objected and, during a bench conference, moved for a mistrial, arguing that the prosecutor had improperly discussed sentencing in front of the jury and mischaracterized the charge of involuntary manslaughter. The trial court denied the motion for mistrial and told the prosecutor to "move along."

The parties left the bench conference, and the prosecutor continued with her closing argument, stating:

> [W]hat you need to do to hold these two thugs accountable is find them guilty of all the murders. Now, you can just circle guilty and just leave blank where it says involuntary manslaughter. But it can't be both. It has to be one or the other. You can find them guilty of all these murders. It does not mean that they're going to get more time or something like that.

Kessler objected again, arguing that the prosecutor had continued to improperly talk about sentencing in front of the jury. Kessler did not, however, move for a mistrial. The court responded, "That's right. The punishment belongs to the Court," and told the prosecutor to move on. The prosecutor resumed argument, stating, "[t]hey're not going to be held responsible for more than one even though you

12

pick more than one. We, meaning the Judge and the lawyers, will pick out one of the ones that you pick from." Robinson objected to this statement, but Kessler did not join or adopt the objection; the trial court sustained Robinson's objection, instructed the jury "that the punishment would be left up to the Court," and once again instructed the prosecutor to "[p]lease move on." Finally, the prosecutor told the jury:

> So you can pick all of those and you should because they did all of them. I don't want you to be confused when you get in there and say which of these do we have to pick? You don't have to pick. You can pick all of them and you should.

Kessler argues that the trial court erred in failing to grant his motion for mistrial because the statements made by the prosecutor were legally incorrect, rose to the level of prosecutorial misconduct, and improperly injected sentencing into the jury's consideration. We conclude that the trial court did not abuse its discretion in denying the motion for mistrial.

As an initial matter, although Kessler lodged two objections during closing argument, the second objection was sustained by the

13

trial court, and Kessler did not move for a mistrial at that time. Kessler also did not join Robinson's later objection. Consequently, only Kessler's motion for mistrial — based upon his first objection to the prosecutor improperly discussing sentencing in front of the jury and mischaracterizing the charge of involuntary manslaughter — is preserved for appellate review.[8] See *Stephens v. State*, 307 Ga. 731, 735 (1) (b) (838 SE2d 275) (2020) (where defendant fails to adopt or ask to join objection of a co-defendant, the issue is not preserved for review). See also *Gates v. State*, 298 Ga. 324, 328 (4) (781 SE2d 772) (2016) (holding that alleged errors based on improper remarks made during closing argument are not subject to plain error review).

Turning to that mistrial motion, "[t]rial courts are vested with great discretion to grant or deny mistrials because they are in the best possible position to determine whether one is warranted."

---

[8] Kessler also raises a claim of prosecutorial misconduct for the first time on appeal. However, because this claim was not raised in or ruled upon by the trial court, it is not preserved for review on appeal. See *Duvall v. State*, 290 Ga. 475, 476 (2) (a) (722 SE2d 62) (2012) (defendant's claim of prosecutorial misconduct generally cannot be raised for the first time on appeal).

*Ragan v. State*, 299 Ga. 828, 834 (3) (792 SE2d 342) (2016). "The decision whether to grant a mistrial will not be disturbed on appeal unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial." (Citation and punctuation omitted.) *Simmons v. State*, 308 Ga. 327, 329 (2) (840 SE2d 365) (2020).

Here, Kessler cannot show that a mistrial was essential to the preservation of his right to a fair trial because the trial court corrected any confusion that could have been caused by the prosecutor's misstatement of the law. The trial court twice instructed the jury during closing argument — once after sustaining Kessler's second objection, and again in response to Robinson's objection — that sentencing was an issue solely left to the court. Shortly thereafter, during the final jury charge, the trial court instructed the jury on involuntary manslaughter based on reckless conduct, reckless conduct, malice murder, felony murder, aggravated assault, armed robbery, and intent, and again instructed the jury not to concern itself with sentencing. "[W]e presume that

jurors follow the law." *Venturino v. State*, 306 Ga. 391, 400 (4) (830 SE2d 110) (2019). Thus, assuming without deciding that the prosecutor's statements were improper, the trial court took appropriate corrective action to address the statements without having to declare a mistrial. Consequently, this enumeration fails.

4. During the charge conference, Kessler objected to the trial court giving the State's requested charge on the definition of a "crime" that included a reference to "criminal negligence." The requested charge stated as follows: "This defendant is charged with a crime against the laws of this state. A crime is a violation of a statute of this state in which there is a joint operation of an act (or omission to act) and intention (or criminal negligence)." See Ga. Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 1.40.10 (4th ed. 2007) (Definition of a Crime). Kessler argued that, because the charge did not also include the definition of "criminal negligence,"[9] it would confuse the jury and lower the burden of proof

___

[9] "Criminal negligence is an act or failure to act which demonstrates a willful, wanton, or reckless disregard for the safety of others who might reasonably be expected to be injured thereby." OCGA § 16-2-1 (b).

16

for felony murder. The trial court overruled the objection and, during its final jury charge, instructed the jury on the definition of a "crime" as follows: "[T]his defendant is charged with a crime against the laws of this state. A crime is a violation of a statute of this state in which there is a joint operation of an act or an omission to act and intention or criminal negligence."

Kessler argues that this was error. We disagree, because the trial court's instruction was an accurate statement of the law. See OCGA § 16-2-1 (a) ("A 'crime' is a violation of a statute of this state in which there is a joint operation of an act or omission to act and intention or criminal negligence."). Further, at Kessler's request, the jury was instructed on the lesser included offense of involuntary manslaughter based on reckless conduct. And, as this Court has recently explained, "reckless conduct is an act of criminal negligence, rather than an intentional act, that causes bodily harm or endangers the bodily safety of another." (Citation and punctuation omitted.) *Stepp-McCommons v. State*, 309 Ga. 400, 405 (2) (c) (845 SE2d 643) (2020). See also *Banta v. State*, 282 Ga. 392,

17

397-398 (5) (651 SE2d 21) (2007). The trial court also properly charged the jury on the general law of intent, as well as the intent required to prove malice murder, felony murder, aggravated assault, armed robbery, aggravated assault with intent to rob, and violating the Georgia Controlled Substances Act. Accordingly, the trial court did not err by including a reference to "criminal negligence" within its definition of a "crime" during the jury charge.

5. Finally, Kessler argues that the cumulative effect of the alleged trial court errors entitles him to a new trial. See *State v. Lane*, 308 Ga. 10, 14 (838 SE2d 808) (2020) ("Georgia courts considering whether a criminal defendant is entitled to a new trial should consider collectively the prejudicial effect of trial court errors and any deficient performance by counsel – at least where those errors by the court and counsel involve evidentiary issues."). However, "[w]hen reviewing such a claim, we evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors." (Citation and punctuation omitted.) *Cox v. State*, 306 Ga. 736, 743 (2) (e) (832 SE2d 354) (2019). Because Kessler has

failed to show any errors that would provide this Court with a basis for evaluating their cumulative effect, this claim fails.

*Judgment affirmed. All the Justices concur.*

Decided May 3, 2021 — Reconsideration denied June 1, 2021.

Murder. Muscogee Superior Court. Before Judge Rumer.

*Christina R. Cribbs*, for appellant.

*Julia F. Slater, District Attorney, Sadhana P. Dailey, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Sassano, Elizabeth Rosenwasser, Assistant Attorneys General*, for appellee.